# HIGH COURT

OF

# ERRORS AND APPEALS.

## JANUARY TERM, 1839.

---

## Green *v.* Robinson.

4   105
77   656

The record certified by the judge of the court below is the only evidence, to the appellate court, of the history of the proceedings in the cause, and the appellate court will not examine any question unless regularly presented by the record.

If a motion *ore tenus* is overruled upon the trial, the party objecting must except at the time or it will be too late. An affidavit stating that such motion was made and overruled, and a certificate by the court below, that the affidavit was presented, will not authorise the appellate court to review the correctness of the judgment of the court below, in as much as the proceedings on the motion cannot thus be made a part of the record.

The allowance or disallowance of amendments is a matter within the sound discretion of the court, and not, therefore, ground for error.

Courts of justice have constantly refused to disturb judgments, by granting new trials, where the alleged injustice of the judgment is the result of the palpable inattention and negligence of the party or his counsel.

A motion to amend the pleadings will not be entertained after the case has been submitted to the jury. It is not a ground of surprise, that the cause is regularly reached on the docket and disposed of. The counsel must know the progress of the court and be in attendance.

Under the statute of this state, in actions on promissory notes, the party by pleading in chief, admits the execution of the note.

[Green *v.* Robinson.]

Where the defendant, by the mistake of his attorney, files a wrong plea and one that did not cover his defence, and the attorney, although present, did not observe that the cause was on trial until after it had been submitted to the jury; but learning the papers in the cause were handed to the jury, moved to arrest the trial, but the motion being denied, moved again to withdraw the plea, and for leave to amend pleadings, which was also refused: *Held,* the proceedings did not constitute good grounds for granting a new trial.

IN error to the circuit court of Warren county.

This was an action of *assumpsit* upon a promissory note, to recover of the plaintiff in error and others, the sum of 14,500 dollars. The plea of non-assumpsit was filed by all the defendants. There was a verdict and judgment for the defendant in error. A motion was afterwards made for a new trial, on the facts stated in the affidavits of Thomas M. Green and his counsel N. D. Coleman, Esq. The affidavit of Green states, that his partner, Glidwell, signed his name to the note as surety, without · any authority, and against an express stipulation in the articles of co-partnership, and that he is not bound to pay the debt. That he employed Mr. Coleman to manage his defence, and that by some inadvertence, the attention of his lawyer was not called to the case until after it had been submitted to the jury, and recites the history of the progress and trial of the cause as it is furnished by Mr. Coleman in his affidavit. Coleman states, that when retained as counsel, Green communicated to him the ground of his defence. That Messrs. Webster and Smith, who were engaged as attorneys for the other defendants in the suit, filed the general issue in the usual form, for all the defendants, and that upon an inspection of the plea, he approved and adopted it. There was no affidavit of the truth of the plea. He took no further step in the suit until the meeting of the court. He did not mark his name to the plea, nor on the calendar, nor by any other means inform the court or opposite counsel that he was employed. The cause was regularly called up for trial, and submitted to the jury, on the issue which had been filed. After the papers were handed to the jury, and the court had called the next cause, Mr. Coleman ascertained from a bystander who was

[Green *v.* Robinson.]

next him, that his case was on trial. He then made an application to arrest the trial; but the court held it was too late. He also asked to withdraw the plea and to amend, which was refused; but no exception to the opinion of the court at that time. The motion was subsequently made for a new trial, which was denied, and exceptions taken to the opinion of the court.

The plaintiff in error assigned the following causes for reversing the judgment.

1. The court, it was said, erred in refusing leave to withdraw the plea.

2. In refusing to allow the plea to be amended.

3. In refusing a new trial. It was also insisted that the verdict and judgment was for too much.

Mayes, for plaintiff in error.

The calculations made and filed, will show that the verdict and judgment is for too much, and for that cause the court should reverse. To avoid this, it is expected the defendant's counsel will attempt or offer to enter in this court a *remittitur.* It is contended on the part of the plaintiff in error,

1. That a *remittitur* cannot be entered in this court. This court has, by the constitution, " no jurisdiction but such as properly belongs to a court of errors and appeals." The jurisdiction properly belonging to a court of errors and appeals, is of only two classes. 1st. To revise the decisions and judgments of inferior courts. 2d. Such incidental powers as are necessary to the full exercise of this principal power of revision; for example, to award a *mandamus,* to compel the inferior judge to sign a bill of exceptions. Receiving a *remittitur,* is of neither class. The judgment is of the inferior court; on that execution issues. The statute, Rev. Code, p. 125, 126, sect. 96, 97, 98, is not against; but supports me.

2. That if a *remittitur* can be entered in this court, it is matter of sound and equitable discretion, to admit or refuse leave to enter it, and that, under the circumstances of the case, this court will not permit the *remittitur* to be entered, or if it should be permitted to be entered, it will only be on equitable terms,

[Green *v.* Robinson.]

which terms will be, that the defendants in error will agree, that if the fact that the note was executed as stated in the affidavit of Green, would constitute a good defence at law, this court shall order a new trial. If the defence is a valid legal defence, the plaintiff below can only cut Green off from making that defence by a legal advantage which he has obtained over Green, against the merits of the case.

But the damages being excessive, if the case stands as it does on the record, it will be reversed, and thus we here have a legal advantage over him, by which we can get at the justice of the case. The court will not consent to his taking from us, or aid him in depriving us of this legal advantage, and leave him to the enjoyment of his legal advantage, thereby defeating us in our effort to get at a fair trial on the merits. This is according to human reason and human laws. Neither a court of law, nor a court of equity, will deprive a party of a legal advantage, unless it be against justice. Then is the defence we set up a good defence? Surely it is so in conscience, and is so in law. *Ex parte* Peale, 6 Ves. Jun. 604; Breckenridge *v.* Shaine, 4 Dana, 375; Rogers *v.* Batchelor, 12 Peters's Rep. 229; Winship & Co. *v.* The Bank of the United States, 5 Peters's Rep. 561; 4 M'Cord, 519; 4 American Jurist, 371. A partner cannot bind by guaranty without authority. Wagnon *v.* Clay, 1 Marshall, 257; Gow on Partnership, 74. Authority may be inferred. Gow on Partnership, 74; Bank of Kentucky *v.* Brooking, 2 Littell's Rep. 41, pl. 5.

Could it have been made under the pleadings as they were made up? It could. See the statute requiring *non assumpsit* to be pleaded, and authorising all defences under it. Laws of Mississippi, 718–19.

To swear to the plea was not necessary to let in the defence. The omission to swear to it only admits the signature as made. Any special *defence* might be given in evidence, such as coverture, &c. If it could not be given in evidence under the pleadings, should not the court have granted a new trial, that the pleadings might be reformed and justice done? It is respectfully so considered by the counsel. The counsel desired to act; he was cut off by some (here) unknown rule of practice.

[Green *v*. Robinson.]

Time should have been allowed to swear to the plea, and if the rule of practice was against it, it was so hard a rule, and its operation so unjust and oppressive, that it ought, under the circumstances, to have been relaxed, or if not, the verdict should have been set aside in favor of justice.

Were the causes for a new trial sufficient to require of the court, in the exercise of a sound discretion, that it should grant a new trial? Such must be the case. " Next to doing right, the great object, in the administration of public justice, should be to give satisfaction. If the verdict be liable to many objections and doubts in the opinion of his counsel, or even in the opinion of bystanders, no party would go away satisfied," &c.; " such doubts would be with him decisive, he would arraign the determination as manifestly unjust, and abhor a tribunal which had done him an injury, without the possibility of redress." 3 Black. Com. ch. 24; 3 Tomlin, Trial III, p. 676, 677.

" It (a new trial) is not granted in cases of strict right, or *summum jus*, where the rigorous exactions of extreme legal justice are hardly reconcilable to conscience." *Ibid.* If not granted in favor of a party who asks for extreme legal justice, hardly reconcilable to conscience, how readily would that same liberal and enlightened jurisprudence decide, that it should be granted in favor of a party who asks for legal justice, founded in the purest and best conscience, who has done all he could to obtain a fair hearing of his cause, and who had been accidentally defeated by the attention of his counsel having been, for a transitory moment, withdrawn from the calling of the docket, to attend to professional duties which devolved on him at the moment, and who asked to be heard before the jury retired, but was repulsed by the judge, the high priest on the sacred altar of justice, on the ground that some rule of court, in such a case, cut off justice; how readily would it decide that he, who seeks by ." extreme and rigorous rules of practice," to strangle justice, and put down right, should not prevail, but that his unconscionable advantage should be wrested from him, and justice and right done, according to law and conscience. If not, would not only the party, but every honest man and lover of justice, to use the language of Blackstone, " arraign the determination as manifestly unjust; and

[Green *v.* Robinson.]

abhor a tribunal which he imagined, nay knew, had done him an injury, without a possibility of redress."

There is a material and obvious distinction in the grounds, which will require a reversal of the judgment, overruling, and one granting a new trial. By granting a new trial, the cause is only kept open for another trial on the merits; and in that trial, each party has an equal chance for justice; but by overruling a motion for a new trial, the unsuccessful party is concluded, and may be subjected to irretrievable loss, and irreparable injustice. Therefore, this court will be more inclined to sustain a judgment granting a new trial, than one overruling the motion. Ewing *v.* Price, 3 J. J. Marshall, 523.

Of late years, courts of law have gone more liberally into the granting of new trials, according to the circumstances of the respective cases; and the rule laid down by Lord Parker in the case of The Queen *v.* The Corporation of Helston, &c., 12 Ann. B. R. seems to be the best general rule that can be laid down upon this subject, viz: "Doing justice to the party," or in other words, "attaining the justice of the case." Lord Mansfield in Bright's Ex'r. *v.* Enyon, 1 Burr. 395.

De Roufigny *v.* Peale, 3 Taunt. 484. "This cause had stood first in the cause paper for trial at a sittings in term. When the cause was called on, the defendant's attorney had delivered no brief to his counsel, although he had had a consultation with him the night before, and the cause, being thus undefended, a verdict passed for plaintiff. Soon after the verdict had been recorded, the defendant's attorney came into court with the brief, to instruct his counsel to defend his cause. The court granted a new trial at attorney's cost." Graham on New Trials, ch. 6, p. 178.

"But notwithstanding the disinclination of the courts to relieve against surprise occasioned by negligence, *yet when justice demands, it will be done;* and if the negligence be really attributable to the attorney, he will be directed to pay the costs." Vide Martyn *v.* Podger, 5 Burr. 2631.

"Action on a surety bond, a verdict at the sittings was found for plaintiff, the cause being undefended at the trial. The affidavit stated, that the cause was a long way off, and was called on, and the attorney not attending, it was undefended; that the

[Green *v.* Robinson.]

defendant had a good defence. Ellenborough, C. J. granted a new trial at defendant's cost." Greatwood *v.* Sims, 2 Chit. Rep. 269.

"The object of granting new trials is, that justice may be done between the parties; and where the court clearly sees that a case has not been fairly tried upon the merits, and that without fault of the party, justice and reason require that a new trial should be granted." Daniel *v.* Rose, 1 Nott & M'Cord, 33.

"Where counsel suffered a verdict to pass against his client, without a trial, clearly by mistake, and to his prejudice, a new trial will be granted." Riley *v.* Emmerson, 5 N. Hamp. Rep. 531.

"Where no notice at all, or too short notice is given, or where it does not sufficiently apprise the party, either of the cause, or of the time or place at which it is intended to be tried, the verdict will be set aside." Graham's Practice, ch. 16, p. 508.

"The court will, under certain circumstances, grant a new trial where a verdict has been obtained against a party, on account of the absence of his counsel." 2 Salk. 645.

"Where a cause was called on, and tried as an undefended cause, in consequence of defendant's attorney neglecting to file his briefs, the court granted a new trial at attorney's cost. 3 Taunt. 484.

"So where a cause in the calendar of the day, was tried out of its order, as an undefended cause in the absence of defendant's attorney, the court of king's bench granted a new trial." 3 B. & A. 328.

A new trial will seldom be granted, where a verdict has been given against a party for want of evidence which might have been introduced at trial, unless the verdict be manifestly against the justice and equity of the case. 5 Burr. 2631.

Holt and Harrison, *contra*.

To the first assignment of errors, it may be answered, that there is no legitimate evidence, before this court, that leave to withdraw the plea was ever asked or denied. The bill of exceptions does not state it, but simply recites that in support of a motion for a new trial, an affidavit was read, *in which affidavit*, it is said, this leave was asked and refused. The judge does not pretend to cer-

[Green *v.* Robinson.]

tify to the verity of this affidavit, in this or in any other respect. The refusal of the court, to allow a withdrawal of the plea, was not a matter *in pais*, but a judicial act, of the existence of which this court cannot be informed, through the affidavit of counsel or client. The law has established a more solemn and less fallible channel of communication, between the supreme and inferior court, in a bill of exceptions, in which the inferior court certifies its actings in the premises to the appellate tribunal.

At the time when leave to withdraw the plea was denied; the defendant (Green) took no exception to the opinion of the court, and *that* was an *acquiescence*. Some days after, when he made his motion for a new trial, he urged among other reasons, why the motion should be sustained, the *refusal* of the court to permit a withdrawal of his plea. After the motion had been overruled, he excepted to the opinion of the court overruling it. He never has at any time excepted to the opinion of the court, which refused him the privilege of withdrawing his plea. Yet the statute and the repeated decisions of this court, require a party to tender his bill of exceptions at the moment the obnoxious opinion is given; or he can never assign the same for error.

To the *second* error assigned, it may be answered, as to the first, that it does not legitimately appear that leave to amend was asked for.

Under the statute, Revised Code, 126, sect. 90, "the courts of law have full power and authority to order and allow amendments to be made in all proceedings whatsoever, before verdict, so as to bring the merits of the question between the parties fairly to trial." Before the court can be called upon to examine this power, it must be made to appear by the party asking the amendment, that such amendment is necessary to bring the merits of the controversy fairly to trial. In the case at bar, the permission to amend was refused, because the attorney who asked it, expressly stated, that he did not know what amendment he wished to make, and desired that his client might be sent for in order that he might consult him upon the subject! No defect in the pleadings was pointed out—no defence suggested to the court—which, of course, could not determine that the amendment sought for was essential to the purposes of justice.

[Green *v.* Robinson.]

The power of the circuit courts to allow or disallow amendments, the withdrawal of pleas, and filing new ones, are regulated by their sound discretion; and, although they may err in the exercise of this power, such error cannot be corrected in this court.

" The allowance or disallowance of amendments, is not matter for which error lies." 11 Wheat. 280; Coxe's Dig. 281, s. 77; Denn *ex dem.* Walden *v.* Craig, 9 Wheat. 576; Coxe's Dig. 277, s. 32.

" The refusal of the court below to allow a plea to be amended, or a new plea to be filed, or to grant a new trial, or to continue a cause, cannot be assigned as error." Marine Ins. Co. of Alexandria *v.* Hodgson, 6 Cranch, 206; Coxe's Dig. 277, s. 32.

The same doctrine has been repeatedly recognised in this court, except as to new trials, in regard to which, the statute of Mississippi has changed the rule adverted to.

To the opinion of the court refusing the leave to amend, no exception was taken at the time; for which additional reason, that opinion cannot be assigned for error here.

In response to the third error assigned, we insist that the court acted properly in overruling the motion for a new trial.

1. Because, as already shown, no error had been committed by the court in the progress of the case, which it was desirable to correct upon a second trial.

2. Because the state of the pleadings would not have admitted the defence, which Green proposed to make. The plea filed by Webster and Smith, and adopted by Coleman as the plea of Green, was *non assumpsit.* It was not sworn to, nor was any special plea filed, with or without affidavit, putting in issue the execution of the note, on the part of Green. Under the statutes of 1824 and 1836, the pleadings as made up, fully admitted the note sued on to be the note of all the parties sued. Green, then, either from his own negligence, or that of his counsel, was not in a condition to make his defence available, and the court will never, under such circumstances of unexplained *laches,* grant him a new trial merely to enable him to remodel his pleading. 2 Term Rep. 119, 120; 9 Johns. Rep. 78. In M'Neil *v.* Stewart, 7 Cowen, 474, it was held that, " where a defendant by the mistake of his attorney, pleads a plea which does not cover his defence, and on trial

10*

[Green *v.* Robinson.]

a verdict is therefore had against him, the supreme court will not for that reason, grant a new trial;" the judge remarking that "a contrary practice would lead to endless excuses founded in mere pretence."

"The inadvertence of counsel in the management of a cause, is no ground for granting a new trial." Meeke *et al. v.* Wilson, 1 Gallis. 419; Coxe's Dig. 502; Vernon *v.* Hawkey, 2 Black. Rep. 802; 2 Term Rep. 120.

"The act of a counsel in a cause, is to be considered as the act of the client, and consequently, if a counsel waive a thing which would have been in favor of his client, it is the same thing as if the client himself waive it. The mistake of the judge or jury is a good cause for granting a new trial, but the mistake of a counsel is not." Reg. *v.* The Corporation of Helston, 12 Mod. 202–3.

3. Because there is no sufficient reason shown, why the defence now urged, was not made upon the first trial. There was the grossest *laches* in client and counsel, against the consequences of which the court will never relieve by a new trial. 2 Bibb, 18.

"A new trial ought not to be granted on account of the neglect of the agent or attorney of the party who applied for it. The neglect of the attorney or agent, is the neglect of the principal." Patterson *v.* Mathews and Wife, 3 Bibb, 80; Legrand *v.* Baker, &c., 6 Monroe, 248; Barrow *v.* Jones, 1 J. J. Marshall, 470. "For injuries resulting to clients from negligence or inattention on the part of the attorney, courts cannot give redress against the other party to the suit, as by granting a new trial." 1 J. J. Marshall, 471.

In Breach *v.* Castuton, 20 Eng. Com. Law Reps., it was held that, "the court will not grant a new trial where a defendant or his attorney, having an opportunity of trying, permits a verdict to be taken as in an undefended cause." *Vide,* also, 21 Ibid. 252.

The negligence of the attorney in this case, is probably without a parallel in the history of the profession. Though retained in the defence long before the meeting of the court, and though distinctly apprised by his client, of the nature of the defence which

[*Green v.* Robinson.]

he was to urge, yet he files no plea, general or special, putting in issue the execution of the note sued on, by his client. He does not procure any affidavit to be made, but on the contrary adopts a plea, which expressly admitted the note to be the note of Green. He did not mark his name to the case, or in any manner indicate to the opposing counsel or to the court, his connection with it. Absorbed in other business, to him more attractive, he does not watch the progress of the court, but permits the case to be called and tried in his presence, without exciting his attention, and when aroused upon the subject, he starts to his feet, crying out " surprise!" asks to amend, but cannot inform the court what amendment he desires to make, and wholly refrains from even intimating to the court the character of the defence, which by his client he had been instructed to make. The *laches* of the client was equally flagrant. Though in town, engaged in his ordinary avocations, he was not in attendance upon the court, no witnesses were present at the bar, nor had any been summoned to support his defence. The articles of copartnership, now relied on, though in his possession, were not produced or exhibited. Such gross and culpable supineness, the law abhors, and will never countenance it in those who seek the aid of courts of justice.

Green's affidavit is, at best, but an affidavit of merits, and as such is no ground for a new trial. 1 Caines's Rep. 154.

A new trial will never be granted where the application rests upon the negligence of the party; 3 Serg. & Rawle, 604; nor because evidence which might have been produced, was not produced. 1 Wilson, 98; Strange, 691; 18 Johns. Rep. 489; 2 Binney, 582. In the last edition of Bacon's Abr. 783, it is stated that, " in a modern case, a new trial being moved for, on account of the defendant's attorney having neglected to attend the trial, it was referred, and *per curiam*, " as the plaintiff has not been guilty of any misbehavior or fault, there ought not to be a new trial, which, as his witnesses may die, or be out of the way, may be very inconvenient to him, nor is it necessary to grant one; for the defendant who is bound by the verdict, has a remedy against his attorney. M. R. Clifton *v.* Grey, Mich. 31 G. 2, in B. B.

" Upon a motion for a new trial on the ground of surprise, the affidavit of the applicant should state the particulars of the defence,

he is to set up, and that should be stated by indifferent testimony. 3 Haywood, 145.

4. The bill of exceptions does not profess to set out the whole evidence which was before the court on the motion for a new trial, but only that which was offered by Green. For aught that appears, the affidavit of Green, as to his meritorious defence, was overthrown by counter affidavits. The production of the articles of partnership may have impeached and destroyed the force of his oath. The presumption of the law is universally in favor of the action of the court below. 1 Bibb, 303; 3 Littell, 169; 5 Littell, 221; 6 Wheat. 542; 1 Marshall, 314; 1 Monroe, 196; 1 J. J. Marshall, 318. He who complains of it as erroneous, assumes upon himself the *onus* of pointing out the error, clearly and distinctly; it is not to be made out by inference. Where the judgment of the court is assailed as unwarranted by the affidavits, or other evidence before it, all that evidence must be embodied in the bill of exceptions, and unless the bill of exceptions profess upon its face so to embody it, the presumption referred to will prevail, and the appellate court will intend that there were facts before the court below, which justified its judgment. 5 Littell, 217–18–19; 10 Yerger, 499; Cassel *v.* Franklin, 2 Tenn. Rep. 201.

5. The exception to the opinion of the court overruling the motion for a new trial, does not appear to have been taken at the time the opinion was pronounced.

It is a time-honored maxim of the law " that they shall lose most who trust most." Green made Glidwell his partner, entrusted him with the management of his fortune, and presented him to the world covered with the badge of his confidence. He proved faithless. Who should suffer from such infidelity? In a contest between Green (who has thus rashly confided) and Robinson, who trusted because Green had pronounced Glidwell worthy of all trust, there can be no question but that Green should be the sufferer. It has been for years, in the common course of business in Mississippi, for partners to use the copartnership name in endorsements, and suretyships. There was nothing in the conduct of Glidwell in thus pledging the partnership name to excite the suspicions of Robinson, or to shake the confidence in him, which the fact of copartneship inspired.

[Green *v.* Robinson.]

Mr. Justice Trotter, after stating the case, proceeded as follows:

When the motion was made to withdraw the plea, the cause had been submitted to the jury, and the defendant took no exception at the time to the action of the court in overruling it. Motions of this sort are generally made *ore tenus*, at the bar of the court, and the record is silent, both as to the motions and the decision of the judge. Such was the case here. The record says nothing of this motion, and we are only informed of it by the affidavit of the attorney in support of the motion for a new trial, in which he details the previous history of the cause, and in which this motion to withdraw the plea is stated. The only bill of exceptions in the record is that which was drawn up after the question of a new trial was disposed of. This contains the affidavit of Coleman reciting the previous motion, but the judge has not certified to us, that the motion was made; nor could he properly do so. The law has established a certain method of communication between an appellate court and the inferior tribunals. The record certified by the judge of the court below is the only legal evidence of the history of the proceedings in the cause, and if that is silent we cannot look to other sources. And the party who excepts to the conduct of the court must take care to make the matter of exception a part of the record, either by bill of exceptions taken at the time, or in some other mode pointed out by law. The only evidence before us of the motion to withdraw the plea is the affidavit of the attorney, and the bill of exceptions does nothing more than to certify that the affidavit was presented. It does not aver its truth. We are constrained, therefore, to disregard this assignment of error. It has been held by repeated decisions of this court, that the party who excepts to the opinion of the judge must tender his bill of exceptions at the time, or it is too late. The defendant below did not except; he is, therefore, deemed to have acquiesced in the decision. And so, in truth, he appears to have done, for he immediately applied to the court for leave to amend the plea, which was equivalent to a waiver of the first application. The court refused to allow the amendment. Whether the court acted properly or not in refusing this application, is not for us to decide. It was a matter resting in the sound discretion of the judge, and

[Green *v*. Robinson.]

his decision is not open to review in this court. The allowance or disallowance of amendments is not ground for error. 11 Wheaton, 280. But a conclusive answer to this assignment of error is the fact stated by the attorney himself, that he could not, when the application was made by him, " point out or specify the defects and amendments wished to be made." How, then, could the judge determine whether an amendment was necessary to reach the merits of the cause?

The only question left for the determination of this court is, whether the judge below was right in refusing a new trial. This was a question which addressed itself to the sound discretion of the court, regulated as that discretion must be by such rules as have been adopted to prevent injustice and guard against abuse. It is the cherished policy of the law to suppress litigation and secure repose to society. Hence it has become a settled rule that when the matter of controversy has been determined by a competent court it shall not be again agitated, except when manifest injustice has been done, by the mistakes of the judge or the jury, or the improper and fraudulent conduct of the party. To vacate a judgment obtained by any of these means is the province of the judge who presides at the trial; or, by our act of assembly, it may be done on error to the appellate court. And to exert this power in such a case, is a duty required no less by the settled rules of law than the essential principles of justice. In such case it is the proud and boasted privilege of an independent and upright judge to interpose and set aside the determination. When, however, the diligent suitor has obtained his judgment fairly, and by the regular modes of proceeding and of proof, he must be permitted to enjoy its benefit. He is not to be again turned into a litigant, or otherwise prejudiced, for no better reason than that his adversary, through neglect or ignorance, omitted in proper time to come forward and contest his right. Therefore courts of justice have constantly refused to disturb judgments when the alleged injustice of them is the result of the palpable inattentiou and supineness of the party himself; or, when he had a full opportunity to oppose it, but by carelessness omitted to do so. The cases in which new trials have been granted, when the attorney neglected to attend to the cause, will be found to be those where glaring injustice has

[Green *v.* Robinson.]

been done.   The case of Martyn *v.* Padger and Others, 5 Burrow,
26, 32, which has been so much relied on by the counsel of the
plaintiff in error was of this description.   The action was trespass
against the sheriff and his baliff for seizing certain goods alleged
to be the property of the plaintiff.   The defendants produced in
evidence upon the trial an execution against Wm. Martyn, the
son of the plaintiff, but showed no copy of the judgment.   The
plaintiff produced a bill of sale from the son embracing the pro-
perty in question.   There was a verdict for the plaintiff for want
of the judgment.   A new trial was granted, but it was done
because the court was satisfied that the recovery was manifestly
contrary to reason and justice—the bill of sale being fraudulent.
The judges say it would be shameful that the plaintiff should reap
an advantage from so gross an act of fraud.   They put the case
upon the palpable fraud of the plaintiff; and this was so clear that
Lord Mansfield himself advised the motion for a new trial, and
very properly determined that the inadvertence of the attorney in
not producing a copy of the judgment should not be the means of
consummating and perpetuating what he terms a most shameful
fraud.   That case was decided upon the fixed maxim that fraud
vitiates every thing, and that on no account shall a man be suf-
fered to reap a benefit from it.   The case of Bright *v.* Enyon, 1
Burrow, 395, was likewise urged with much warmth as authority
to control the present question, and particularly what is there said
by the judges upon the subject of new trials.   There is nothing
said in the case in regard to what sort of negligence will be re-
lieved against.   That case, like the other, was placed upon the
palpable injustice of the verdict.   The defendant recovered upon
a written discharge of the debt on which he was sued.   The facts
were laid before the jury, and Lord Mansfield said, in giving his
reasons for a new trial, " what I go upon is the apparent manifest
fraud and imposition in obtaining this discharge from the testatrix
if she really signed it.   And again, he says, " the writing upon
the face of it speaks fraud and imposition."   The defendant, upon
his own case stated by himself, and the evidence on both sides,
showed that he had obtained the hand of the plaintiff to the
writing fraudulently, and therefore he was not permitted to avail
himself of it.   That case was fully warranted by the general rule

laid down by the judges, that is, that a new trial should be granted in all cases where it may be necessary to do justice to the party, or to attain the justice of the case. But what proof have we that justice has not been done in the present case? Upon what evidence are we at liberty to say, in the emphatic language used by the judge in the cases referred to, that this verdict is manifestly contrary to reason and justice? Upon what part of this record is it made apparent that the verdict was obtained by the manifest fraud of the plaintiff? It is true there is the *ex parte* affidavit of Green that his name was signed to the note by his partner, without his consent; and this is unsupported by any proof on the trial or the record. But this is not pretended to have been brought about by any improper conduct of Robinson; and though the affidavit states that there was a stipulation in the articles of copartnership, that neither partner should be at liberty to bind the firm as surety for others, yet it is not insinuated that Robinson knew this, and indeed the affidavit is not even fortified by the production of the agreement. It is not shown to the court. Why he chose not to do so we have not been informed. This affidavit is no more than an affidavit of merits, and as such is no ground for a new trial, 1 Caines's Rep. 154; and this rule is founded in wisdom and sound policy. It cannot be endured that a party to a suit in court, with full notice of its pendency, shall sit by and make no defence, and after a verdict against him have it set aside upon an affidavit of merits. That would be to pervert the maxim that the law was made to subserve the vigilant and not the negligent. But it is urged that the counsel of the defendant was taken by surprise, and was prevented from making the defence disclosed in the affidavit. This is not that sort of surprise which is sometimes considered sufficient to authorise a new trial. The attorney could not be surprised that the cause was reached on the docket, and submitted to the jury. He should have noticed the progress of the court, and been in attendance. He was in attendance, and stood in the court room and suffered the cause to be called and placed with the jury before he let the court or the opposite counsel know that he was employed. But he has made it manifest, that if he had appeared on the trial he had precluded himself from insisting on the only defence his client had. By pleading in chief

[Green *v.* Robinson.]

he had admitted the execution of the note.   Of what avail would it then have been if the court had arrested the cause and allowed him to offer proof?   It is then, for the first time, he becomes sensible that his plea will not cover the defence of his client; and, at that moment, when the papers have gone to the jury, he asks permission to amend.   It is not surprising that it should have been refused.   The amendment is not sought upon newly discovered matter of defence.   The only ground of his defence had been communicated to him by his client before the meeting of the court.   And notwithstanding this, he had, as he tells the court, deliberately adopted the plea which excluded it.   And what is still more strange, when the amendment is asked for, it is coupled with a request that his client might be sent for to point out and specify what amendments were necessary.   Surely these facts do betray a degree of negligence and inattention so gross that it would be a violation of the most obvious rules to interpose.   He had made no preparation.   And is the plaintiff to be prejudiced by this remissness?   The law says he shall not.   In the case of M'Neil *v.* Stewart, 7 Cowen, 474, it was held that where a defendant, by the mistake of his attorney, files a plea which does not cover his defence, and there is a verdict against him, the court will not for that reason grant a new trial.   And the judge remarks that a contrary practice would lead to endless excuses founded in mere practice.   The inadvertence of counsel in the management of a cause is no ground for granting a new trial.   Coxe's Dig. 502; 2 Tenn. Rep. 120.   And the books are full of this doctrine.   The verdict must therefore stand.   But, as the judgment is for a sum larger than that demanded by the suit, it must for that reason be reversed.   The release which has been entered of record for the excess, however, will authorise this court to render the proper judgment, which will accordingly be done.

Judgment reversed, and rendered for the sum actually due, with damages.